UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARPET SERVICE INTERNATIONAL, INC. and CARMINE MOLFESE, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 09-cv-1083<br>) |
| v. | ) Judge John W. Darrah<br>) |
| CHICAGO REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA LOCAL UNION NO. 13, and PATRICK RYAN, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Carpet Service International, Inc. and Carmine Molfese, brought this action against Defendants, Chicago Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America Local Union No. 13, and Patrick Ryan, under the Labor Management Relations Act of 1947 ("LMRA"), codified at 29 U.S.C. § 141 *et seq.*[1] CSI claims it was harmed as a result of the Union's engaging in unlawful secondary activity when the Union picketed CSI at a jobsite. Molfese individually alleges assault, battery, and intentional infliction of emotional distress, stemming from an altercation with Ryan.

---

[1] Throughout this Memorandum Opinion and Order, Carpet Service International, Inc. and Carmine Molfese are referred to collectively as "CSI"; United Brotherhood of Carpenters and Joiners of America Local Union No. 13 ("Local 13") and Chicago Regional Council of Carpenters are referred to collectively as "the Union"; and the Union and Ryan are referred to collectively as "Defendants."

Presently before the Court is Defendants' Motion for Summary Judgment on CSI's LMRA claim. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the non-moving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by Local Rule 56.1 results in those facts being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Numerous deficiencies in both parties' submissions made the task of identifying the undisputed facts an unnecessarily difficult and tedious exercise. One such deficiency is the parties' repeated citations to materials not included in their submissions to the Court. (*See, e.g.*, Def. 56.1(a) ¶ 24 (citing page 43 of Molfese's deposition); Pl. 56.1(b) ¶ 21 (citing Molfese's deposition of August 5, 2009).) Furthermore, even where Defendants do include the correct pages in the record, Defendants often fail to include the surrounding pages necessary to put the cited testimony in context. For example, Defendants cite to three pages from two depositions for the proposition that a certain act occurred on a certain date. (Def. 56.1(a) ¶ 27.) Although the act is discussed on those

2

pages, the date is not. And the surrounding pages – which may or may not have disclosed that date – were omitted.

The most troubling submission is CSI's Local Rule 56.1(b) Statement of Additional Facts, which is particularly difficult to decipher. Local Rule 56.1 mandates "short numbered paragraphs." N.D. Ill. Loc. R. 56.1(b)(3)(C). CSI's paragraphs are anything but short. CSI repeatedly states numerous unrelated facts in single paragraphs or simply quotes multiple paragraphs from deposition transcripts without any indication as to what particular fact is being asserted. Adding to the confusion, CSI's paragraphs are riddled with typographical errors, sentence fragments, and run-on sentences, making it extraordinarily difficult for the Court to discern what CSI is attempting to assert. The first paragraph of CSI's Statement of Additional Facts is a model of confusion:

> Ross Ferraro at all times material times in June 2008 was Program Manager (Construction Manager) Sunrise Construction Group, Inc. ("Sunrise") general contractor at Morgan Terrace II LLC to construct a building at 24 South Morgan Street, Chicago, Illinois 60607 with whom Plaintiff, CSI had a contact to install carpeting at 24 S. Morgan, employed no construction employees at the common construction site where "an object" at all times during picketing with "sham" picket signs stating: Chicago Regional Council of Carpenters Local 13 ON STRIKE Against CSI for Contract starting on July 26, 2008 and continuing on various dates to August 30, 2008 was to cause the neutral general contractor, "Sunrise" to cease doing business with CSI or change the way it did business with CSI. . . . .

(Pl. 56.1(b) ¶ 1 (errors in original).)[2]

---

[2] CSI's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment is replete with the same deficiencies, despite CSI's filing a "Corrected" Memorandum of Law to correct typographical errors generated "[t]hrough inadvertence and the rush of proof reading and filing a multitude of documents." (*See* Pl. Mot. for Leave to File Corrected Mem. of Law, Docket No. 35.)

CSI's poorly drafted Statement of Additional Facts apparently invited poorly drafted responses from Defendants, who took the opportunity repeatedly to regurgitate nonresponsive legal arguments to a number of CSI's factual assertions. For example, CSI states that Ross Ferraro, the project manager at the jobsite at issue, made certain statements in his deposition. (Pl. 56.1(b) ¶ 10.) Defendants do not challenge the accuracy of Ferarro's statements. Instead, they state, "To the extent that Plaintiff is trying to say that the real reason behind the pickets against CSI is a secondary boycott, denied. CSI had an [sic] contract with an entity known as Sunrise Construction to perform . . . ." (*See, e.g.*, Def. Resp. to Pl. 56.1(b) ¶ 10.) The response continues for over a page, makes numerous completely unrelated factual assertions, and is repeated verbatim in response to a number of CSI's statements. Statements of material facts submitted pursuant to Local Rule 56.1 are no place for argument. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008).

CSI's responses are similarly confusing and inadequate. For example, in response to Defendants' assertion that "[t]he Union never picketed Sunrise Construction" (Def. 56.1(a) ¶ 24), CSI states as follows:

4

> Denied. Plaintiffs' position is that at all times from July 26 to August 31 an object of the Union's picketing was to cause Sunrise Construction Group to change the way it did business with Carmine Construction Group to change the way it did business with Carmine Molfese or to rid itself of Carmine Molfese. (See answer to No. 23 above and see entire Declaration of Ross Ferraro including effect on Ferraro of earlier picketing between July 6 and June 12, 2008 to that effect; Testimony of Robert Cruz to that effect, Tr. 20 L 22 to Tr. 21, L 9; and statements made to him at the time. See the <u>Supplemental Statement of Additional Facts</u> of Plaintiffs' showing the affirmative facts that create the questions of material fact concerning whether "<u>an object</u>" at all times was to cause the neutral employer Sunrise Construction Group to change the way it did business or get rid of CSI.

(Pl. Resp. to Def. 56.1(a) ¶ 24).

This is typical of many of CSI's responses and, for a number of reasons, is entirely improper. First, the dates are clearly inaccurate. (CSI presumably meant "June 6" rather than "July 6.") Second, the only direct citation to the record is irrelevant to Defendants' factual assertion.[3] And third, CSI essentially invites the Court to scour the record looking for support for CSI's arguments. The Court declines CSI's invitation and will not undertake the inefficient task of painstakingly combing through the parties' submissions, searching for factual support for and against unsupported assertions. *See*

---

[3] CSI cites the following testimony from Robert Cruz's deposition:

Q. Now, you mentioned Ryan, and that would be Pat Ryan?

A. Yes.

Q. What did he tell you?

A. Basically the same thing. He made a comment that these guys were, that CSI was nonunion, that he was going to have the job site shut down, and that – a lot of times he'd get there and he'd want to speak with all the union carpenters there and try to pull them off the job or have a meeting with them on the job site. I would just ask them to do it outside the gates of the job site, you know.

(Cruz Dep. 20:22-21:9.) This dialog does not refute Defendants' assertion that they never picketed Sunrise Construction.

*Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (citation and internal quotation marks omitted).

After sorting through the parties' inadequate submissions, the Court is left with the following relevant, undisputed facts – a background that is sparse, at best.

The Chicago Regional Council of Carpenters is a labor organization. (Def. 56.1(a) ¶ 1.) Local 13 is affiliated with the United Brotherhood of Carpenters and Joiners of America and is under the jurisdiction of the Chicago Regional Council of Carpenters. (Def. 56.1(a) ¶ 2.) Patrick Ryan is a labor organizer, who works out of Local 13's offices. (Def. 56.1(a) ¶ 4.)

Some time before June 6, 2008, Michael J. Sexton, a business representative for Local 13, authorized a picket for a contract against Sunrise Equities at a jobsite located at 24 South Morgan, Chicago, Illinois, which is within Local 13's geographic jurisdiction.[4] (Def. 56.1(a) ¶¶ 3, 10.) The picket lasted from June 6, 2008, through June 12, 2008. (Def. 56.1(a) ¶ 10.) The picketers wore signs, which read, "Chicago Regional Council of Carpenters Local No. 13 ON STRIKE against Sunrise Equities Inc. for a Contract." (Def. 56.1(a) ¶ 11.) From June 6 through June 12, all subcontractors on the job ceased

---

[4] CSI contends the picketing against Sunrise Equities was intended to be directed at Sunrise Construction Group, the general contractor at 24 South Morgan but provides no factual support for that statement. The parties do not set forth undisputed facts explaining the relationship between Sunrise Equities, Sunrise Construction Group, and Sunrise Developers, all of whom are referred to throughout the parties' submitted materials. Moreover, as pled in CSI's Complaint, the June 2008 activity is not the basis of relief sought by CSI. (*See* Compl. ¶¶ 14-17, 73-83.)

working, and the job was totally shut down. (Pl. 56.1(b) ¶¶ 5, 5.[5]) Ross Ferraro, a third-party program manager for the 24 South Morgan jobsite, believes that Local 13 picketed Sunrise Equities in June 2008 because Bobak, a subcontractor working on the same site, did not have a contract with Local 13. (Pl. 56.1(b) ¶¶ 1, 9.) On June 12, 2008, Sunrise notified Sexton that it was no longer employing any carpenters at 24 South Morgan. (Def. 56.1(a) ¶ 12.) Sexton removed the picket that same day. (*Id.*)

CSI installs flooring products and also contracted with Sunrise to perform work at 24 South Morgan. (Def. 56.1(a) ¶¶ 5, 15.) Carmine Molfese, CSI's president, was in charge of CSI's day-to-day operations at all times relevant to this suit. (Def. 56.1(a) ¶ 6.) On July 12, 2008, CSI signed a collective bargaining agreement with the National Allied Workers Union Local 831. (Def. 56.1(a) ¶ 25.) On July 28, 2008, Ryan and Ed Sexton (both with Local 13) arrived at 24 South Morgan and spoke with Pietro Molfese, a CSI employee, who showed Ryan his Local 831 card. (Pl. 56.1(b) ¶ 20.) At some point prior to August 19, 2008, Carmine Molfese tried to show Ryan his contract with Local 831, but Ryan refused to look at it. (Pl. 56.1(b) ¶ 22.) CSI did not have a contract with Local 13.

Between July 28, 2008, and August 19, 2008, Local 13 picketed CSI at 24 South Morgan at various times when CSI was present on the jobsite. (Def. 56.1(a) ¶ 22.) Subcontractors refused to perform work while the picket signs were up, and Ferraro ended up changing the way he did business with CSI by having them work nights. (Pl. 56.1(b) ¶¶ 8, 8.) Ryan told Ferraro that CSI was not union, that he was going to have the job site shut down, and that Local 13 would go away if Ferraro fired CSI. (Pl. 56.1(b)

---

[5] The citation to two paragraphs 5 is a result of the apparent mis-numbering of CSI's Local Rule 56.1(b) statement, which is as follows: 1, 3, 5, 4, 5, 6, 9, 7, 8, 8, 10-30.

¶¶ 13, 29.) He also told Ferraro that Local 13 would follow him around and make sure he did not use CSI on any other jobs. (Pl. 56.1(b) ¶ 7.) Local 13 never picketed Sunrise Construction. (Def. 56.1(a) ¶ 24.)

CSI did not lose its contract with Sunrise Construction at 24 South Morgan and was allowed to complete the job; CSI even picked up more work from Sunrise after Local 13 stopped picketing. (Def. 56.1(a) ¶¶ 31, 33.) CSI did, however, have to work days and nights to complete the job during the labor dispute with Local 13. (Def. 56.1(a) ¶ 32.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the

nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

Defendants argue their Motion for Summary Judgment should be granted on two grounds. First, Defendants argue they cannot be liable for unlawful secondary activity because they adhered to the standards for primary picketing at a secondary jobsite that were set forth in *In re Sailors Union of the Pacific (Moore Dry Dock Co.)*, 92 N.L.R.B. 547 (1950) (*Moore Dry Dock*). In the alternative, Defendants assert that CSI has not demonstrated any quantifiable damage that it suffered as a result of the Union's activities.

Defendants first contend they did not engage in any secondary boycotts or other secondary activity that would be actionable under the LMRA, which provides a private right of action for one who is injured as a result of a labor organization's "engag[ing] in any activity or conduct defined as an unfair labor practice in section 158(b)(4)." 29 U.S.C. § 187. Section 158(b)(4), in turn, provides:

> It shall be an unfair labor practice for a labor organization or its agents –
>
> \* \* \*
>
> (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where . . . an object thereof is –

9

\* \* \*

> (B) forcing or requiring any person . . . to cease doing business with any other person . . . . *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

29 U.S.C. § 158(b)(4). The statute thus permits a union to pressure an employer with whom it has its primary dispute but prohibits it from advancing its cause by coercing an unrelated, secondary employer to stop dealing with the primary employer. *BE&K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council*, 156 F.3d 756, 761 (7th Cir. 1998) (*BE&K*) (citation omitted).

For purposes of this dispute, both sides identify CSI as the primary employer and Sunrise Construction as the secondary employer. CSI alleges that Defendants picketed CSI but threatened Sunrise Construction in an effort to coerce Sunrise Construction to change the way it did business with CSI. CSI's theory of liability appears to be somewhat novel. In general, the cases cited in the parties' summary judgment briefs involve actions brought by *secondary* employers claiming damage incurred as a result of a union's unlawful intent behind its primary activities. *See, e.g., BE&K*, 156 F.3d at 759; *Mautz & Oren, Inc. v. Teamsters Union, Local No. 279*, 882 F.2d 1117, 1119 (7th Cir. 1989) (*Mautz*); *Moore Dry Dock*, 92 N.L.R.B. at 550-51. This case, by contrast, involves a *primary* employer (CSI) asserting a claim of damages under the LMRA, on the theory that the picketing against the primary employer was, in reality, a "sham" to cover the Union's true objective of coercing the secondary employer (Sunrise). Nonetheless,

10

Defendants and CSI apparently agree that the *Moore Dry Dock* standards can be applied to Defendants' conduct at 24 South Morgan.[6]

In situations where secondary parties are working at a common site with a primary employer with whom the union has a dispute, the union's activities against the primary employer are presumed lawful if the union adheres to the so-called *Moore Dry Dock* standards. *BE&K*, 156 F.3d at 761 (citation omitted). Those standards are as follows: (1) the activities must be strictly limited to times when the situs of the dispute is located on the secondary employer's premises; (2) the primary employer must be engaged in its normal business at the situs; (3) the activities must be limited to places reasonably close to the location of the situs; and (4) the activities must disclose clearly that the dispute is with the primary employer. *Id.* (citing *Moore Dry Dock*, 92 N.L.R.B. at 549).

But adherence to the *Moore Dry Dock* standards merely creates a presumption, which can be rebutted by evidence of unlawful intent. *R.L. Collsaet Constr. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 655 (7th Cir. 1999) (citations omitted). The ultimate question is a factual inquiry into the union's state of mind. *Id.*

---

[6] In an interrogatory response identifying all facts CSI believed to support its claim that the Union engaged in secondary activity, CSI stated that the Union violated the *Moore Dry Dock* standards. (*See* Def. Reply at 2-3.) Then, in its response brief, CSI claimed the *Moore Dry Dock* standards do not apply and that the Court should adopt a different test articulated by the Fifth Circuit in *Texas Distributers v. Local 100*, 598 F.2d 393 (5th Cir. 1979). But the Seventh Circuit has endorsed the *Moore Dry Dock* standards. *See, e.g., Mautz*, 882 F.2d at 1119. At any rate, as CSI asserts in its response brief, *Moore Dry Dock* is merely an evidentiary test, which can be rebutted by direct evidence of unlawful intent. (Pl. Resp. Br. ¶ 40 (citing *NLRB v. Int'l HOD Carrines, Building and Common Laborers' Union Local 1140*, 285 F.2d 397, 401 (8th Cir. 1960)); *see also R.L. Collsaet Constr. Co. v. Local 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 655 (7th Cir. 1999).)

To succeed on its claim under the LMRA, CSI must demonstrate that any alleged secondary effects were the "intended" consequence of the Union's activities. *See Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 433 F.3d 1024, 1038 (7th Cir. 2006) (citations omitted). Even where primary activity has a foreseeable effect on secondary employers, the union is not liable unless those effects were intended. *Mautz*, 882 F.2d at 1121.

Defendants contend they complied with the *Moore Dry Dock* standards and are thus immune from liability. But compliance with the standards is not sufficient for Defendants to prevail on summary judgment. Defendants also must show a lack of any direct evidence of intent to pressure Sunrise Construction. This they cannot do because CSI has raised a genuine issue of material fact as to Defendants' intent. Ross Ferraro, the program manager at the jobsite, testified that Ryan told him CSI was not union, that he was going to have the job site shut down, and that Local 13 would go away if Ferraro fired CSI. (Pl. 56.1(b) ¶¶ 13, 29.) He also told Ferraro that Local 13 would follow him around and make sure he did not use CSI on any other jobs. (Pl. 56.1(b) ¶ 7.) These statements are sufficient to raise a genuine issue of material fact as to Defendants' intent (as well as Ferraro's credibility), which could rebut a presumption of lawful picketing even if Defendants complied with the *Moore Dry Dock* standards. For purposes of summary judgment, it is therefore unnecessary for the Court to determine whether Defendants' conduct complied with those standards.

Defendants' next argument is that CSI's claim for damages is completely speculative. Under the LMRA, a plaintiff can only recover actual, compensatory

damages for unlawful conduct. *See Local 20, Teamsters Union v. Morton*, 377 U.S. 252, 260 (1964). There must be a nexus between the unlawful conduct and the alleged damages. *Austin Co. v. Int'l Bhd. of Elec. Workers Local Union No. 701*, 665 F. Supp. 614, 617 (N.D. Ill. 1987). When the fact of damage is shown, however, the plaintiff's inability to prove a specific amount does not preclude an award. *George E. Hoffman & Sons, Inc. v. Int'l Bhd. of Teamsters, Local No. 627*, 617 F.2d 1234, 1247 (7th Cir. 1980); *see also Sheet Metal Workers Int'l Assoc., Local Union No. 223 v. Atlas Sheet Metal Co. of Jacksonville*, 384 F.2d 101, 109 (5th Cir. 1967) ("While the employer must prove that he has sustained some injury to his business or property, he need not detail the exact amount of damages suffered. It is sufficient if the evidence supports a just and reasonable approximation.") (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)).

Defendants specifically argue that CSI cannot identify the amount of damages they are claiming as a result of Defendants' actions, that CSI and Carmine Molfese admitted they could only guess the amount, and that CSI cannot identify which days its employees or subcontractors were required to work nights or how much money CSI lost due to the Union's actions.

But Defendants fail to provide legal support for their position that summary judgment should be entered based on a plaintiff's inability to quantify its damages. They cite only two cases. One is a Seventh Circuit case, which states, in dicta, "While [failure to identify lost profits with reasonable certainty] might be a proper argument for summary judgment or judgment as a matter of law, it is not a proper basis for a motion to

13

exclude evidence prior to trial." *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996). The other is an unpublished decision from this district. Neither case constitutes binding precedent.

Furthermore, for a number of reasons, Defendants also fail to provide sufficient factual support for its assertion that CSI cannot prove damages. First, Defendants rely on materials that are not in the record. (*See, e.g.*, Def. 56.1(a) ¶ 36 (citing Molfese Dep. pp. 67-68); Def. 56.1(a) ¶ 37 (citing Ryan Dep. Ex. 1).) Second, Defendants take testimonial statements out of context. For example, Defendants contend that CSI admitted it could only guess the amount of damages caused by the Union's picketing. (Def. 56.1(a) ¶ 36.) But the testimony Defendants cite does not compel the conclusion that CSI cannot support *any* category of damages; it only indicates that certain persons did not know the amount of damages or that CSI could not quantify certain portions of its alleged damages. (*See, e.g.*, Molfese Dep. 64-65 (indicating only that Molfese personally did not know the dollar amount attributable to the overtime worked on the 24 South Morgan jobsite and that Sor Ray would testify as to those figures); Ray Dep. 76:4-78:23 (providing figures for various elements of claimed damages and stating that "50 percent of it is a guess. 50 percent is pretty accurate.").[7]) For purposes of summary judgment, Defendants have failed to show CSI's inability to claim any damages at trial.

---

[7] CSI also filed a declaration of Sor Ray with its response to Defendants' Motion for Summary Judgment. On November 30, 2009, Defendants combined a Motion to Strike Sor Ray's declaration with Defendants' Response to CSI's Statement of Additional Facts. (Docket No. 44.) CSI responded with a Motion to File a Surreply for the purpose of responding to Defendants' Motion to Strike. (Docket No. 46.) By Minute Order dated December 14, 2009, the Court denied Defendants' Motion to Strike but stated that the substance of the motion would be considered in ruling on Defendants' Motion for

In holding that Defendants cannot prevail on summary judgment, it is unnecessary to address the merits of the various theories of damage and liability set forth in CSI's opposition brief. Nor is it necessary to address Defendants' contention that CSI may not rely on a declaration of Sor Ray, which was filed in support of CSI's opposition brief and purportedly disclosed certain damages calculations for the first time after the close of discovery. Sor Ray's declaration was not considered in deciding this Motion for Summary Judgment.

## CONCLUSION

Due to the numerous deficiencies in the parties' submissions discussed above, a very limited factual record was available for purposes of ruling on Defendants' Motion for Summary Judgment. On the record presented, CSI has demonstrated a genuine issue of material fact as to Defendants' intent behind the activities Defendants purportedly directed at CSI, and Defendants have failed to demonstrate the absence of any material fact as to CSI's claim of damages. Accordingly, Defendants' Motion for Summary Judgment is denied.

Date: 1/14/10

JOHN W. DARRAH
United States District Court Judge

---

Summary Judgment. (Docket No. 49.) As discussed below, the court did not rely on Sor Ray's declaration in denying Defendants' Motion for Summary Judgment. It was therefore unnecessary to consider the substance of Defendants' Motion to Strike, and CSI's Motion to File a Surreply was denied as moot.